**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0158-25
              A-0335-25

IN THE MATTER OF BID
SOLICITATION #25DPP01134
R&B DEBRIS, LLC, PROTEST
OF NOTICE OF INTENT TO
AWARD, T0777—
SNOW PLOWING AND
SPREADING SERVICES—NJDOT.

_____

IN THE MATTER OF BID
SOLICITATION #25DPP01134
BVW SERVICES, LLC, PROTEST
OF NOTICE OF INTENT TO
AWARD, T0777—
SNOW PLOWING AND
SPREADING SERVICES—NJDOT.

_____

Argued November 19, 2025 – Decided January 5, 2026

Before Judges Currier and Jablonski.

On appeal from the New Jersey Department of Transportation.

Joseph L. Sine argued the cause for appellant R&B Debris, LLC in A-0158-25 (Cohen, Seglias, Pallas,

Greenhall & Furman, PC, attorneys; Joseph L. Sine and Clifford C. David, on the briefs).

Jennifer R. Budd argued the cause for appellant BVW Servies, LLC in A-0335-25 (Cohen, Seglias, Pallas, Greenhall & Furman, PC, attorneys; Jennifer R. Budd and Clifford C. David, of counsel on the briefs).

Roza Dabaghyan, Deputy Attorney General, argued the cause for respondent Department of the Treasury, Division of Purchase and Property (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Molly L. Case, Deputy Attorney General, on the brief).

PER CURIAM

In these matters, heard back-to-back, appellants submitted a bid in response to a solicitation for snow plowing and spreading services on state highways and interstates. Both appellants received a notice of intent (NOI) to award a contract. However, after appellants failed to present the requisite equipment for inspection by the New Jersey Department of Transportation (NJDOT), the NOI award was rescinded. We granted appellants leave to appeal on an emergent basis and conducted oral argument. After reviewing appellants' contentions in light of the record and applicable principles of law, we affirm.

2

A-0158-25

I.

R&B Debris

In January 2025, the Department of the Treasury, Division of Purchase and Property (agency), issued a Bid Solicitation on behalf of NJDOT. "The purpose of the Bid Solicitation [was] to solicit Quotes for snow plowing and spreading services on all State interstates and highways under the jurisdiction of the NJDOT." The solicitation gave first preference to bidders who proposed to provide their own equipment, over those who needed to use equipment owned by NJDOT. R&B submitted its bid, and was informed on June 27, 2025, that the agency intended to "make a [c]ontract award" for twelve price lines.[1]

On July 17, 2025, NJDOT sent R&B a letter advising it would be inspecting "all trucks and snow plowing equipment," within "[ten] business days of [appellant's] receipt of [the] notice," pursuant to "Bid Solicitation Sections 4.4.1 . . . and . . . 4.12.2." The letter stated that "each vehicle and equipment must be physically on site and presented with a valid vehicle registration." An attachment to the letter listed how many trucks must be presented for each

---

[1] The term "Price Line" is not formally defined in the Bid Solicitation, but is understood as referring to a distinct snow plowing or spreading services assignment. Each price line corresponds to a specific portion of interstate or highway under the jurisdiction of the NJDOT, for which the price line awardee would be responsible in the event of snowfall. See Bid Solicitation Section 1.1.

delineated price line. The letter further advised that the "[f]ailure to comply . . . or presenting fewer than listed number of trucks and equipment may result in the termination of the affected Bid Solicitation [p]rice [l]ines."

On July 23, NJDOT informed R&B it would be at its facility to inspect the trucks and equipment on July 29. On the date of the inspection, R&B provided sufficient trucks for the price lines but no plows. In an October 1, 2025 certification, R&B's manager stated she "advised [NJDOT] that plows were on order, and provided . . . documents, showing purchase and payment." The documents provided in the record reflect quotes and estimates for plows dated July 23, 24, and August 6, all on the day of or after the inspection. Some orders note a partial deposit payment.

On September 5, 2025, the agency issued a revised NOI award and recommendation report to R&B under N.J.A.C. 17:12-2.7(h), rescinding multiple price lines because R&B did not "possess the required equipment for the . . . [p]rice [l]ines" at the time of the inspection. On September 10, R&B submitted a formal protest challenging the rescission of the NOI award. R&B contended the equipment inspection was not authorized by the Bid Solicitation.

On September 12, 2025, the agency issued a final decision affirming the revised recommendation report rescinding the award to R&B. The agency stated

that because "R&B failed to provide plows, . . . NJDOT could not ascertain if R&B possessed the equipment necessary to service the lines awarded."

The agency also addressed R&B's contention that it

> made [its] "facility" available for inspection, and that it was willing to make its equipment available on dates of its choosing well beyond those offered by NJDOT, and that it was not required to have its trucks and plows available for inspection until after October 1st, the date R&B claims is the start of the contract term.

The agency responded that

> Inspections of equipment are set forth . . . in Bid Solicitation Section 8.7 State's Right to Inspect Bidder's Facilities, and Bid Solicitation Section 4.12.2 Equipment Inspections, both of which state that all bidders' facilities, vehicles, and equipment, whether provided by the Contractor or the NJDOT, shall be subject to inspection to ensure the bidder can perform the contract. The NJDOT Letter advised R&B that the NJDOT needed to inspect the equipment of R&B and any approved subcontractors they were intending to use for the . . . [p]rice [l]ines they were awarded. R&B's argument regarding facilities is akin to a manufacturer bidding on work to manufacture parts, and arguing it can perform the contract because it owns a building that fails to contain any manufacturing equipment. R&B was provided with abundant notice in the Bid Solicitation . . . that if it chose to bid [first] Preference, then it would need to provide its equipment, including plows, for inspection.

The agency decision continued, stating

A-0158-25

R&B was provided with ample opportunities to present its equipment to satisfy the inspection requirements on a date of its choosing, and at its own facility, to which R&B affirmatively scheduled its inspection date that was attended by . . . NJDOT. On July 22, 2025, fifty-five (55) trucks were inspected, and no trucks were fitted with plows. While R&B's Protest states that it stands willing to make the required equipment available once it obtains the plows ordered after receiving the June NOI, it failed to present the equipment when NJDOT inspectors were at its facility. In the letter to R&B dated July 17, 2025, ("NJDOT Letter") NJDOT confirmed to R&B that they were the intended awardee under the Bid Solicitation of [certain] [p]rice [l]ines . . . and that an [e]quipment [i]nspection would be conducted "of all trucks and snow plowing equipment. At the time of the inspection, each vehicle and equipment must be physically on site and presented with a valid vehicle registration." . . . Finally, the NJDOT Letter referred to the [p]rice [l]ines, preferences, and number of trucks that had been awarded to R&B. R&B provided no objection to the required inspection, and did not provide opposition to the requirement to present the required equipment for inspection. Further, NJDOT was clear in the correspondence about its expectations for the inspection—R&B would present all trucks and plows, and the failure to present the required equipment may result in the termination of the awarded [p]rice [l]ines.

NJDOT met with R&B at their facility on July 22, 2025. R&B failed to present the required equipment for inspection at that time despite the multiple notifications in the Bid Solicitation, NJDOT Letter, and phone calls that the equipment would need to be presented for inspection to ensure R&B had the equipment it indicated it possessed by bidding [first] Preference in its Quote. Thereafter NJDOT requested R&B's lines be

6

rescinded in accordance with the Bid Solicitation's requirements. Without a physical inspection of equipment as permitted by the Bid Solicitation, the State cannot be sure that a bidder possesses the correct quantity of trucks with snow plows, that those trucks and snow plow[s] are of the proper class as required pursuant to the [p]rice [l]ines in the Bid Solicitation, and that the equipment is mechanically sound, in good working order and, capable of performing all tasks required under the Bid Solicitation. Without the inspection of equipment, the State cannot be assured "that the contract will be entered into, performed and guaranteed according to its specified requirements" as required pursuant to River Vale.[2] For a contract that impacts the public's health, safety, and welfare significantly, the [agency's] and NJDOT's inspection process is a reasonable action to guarantee that its awarded contractors will be able to complete the required work and are in possession of the required equipment.

The agency decision also noted that R&B submitted a price sheet with its bid advising it owned the plows required to perform the contract. However, R&B did not order or purchase the plows until after it received the intent to award contract letter. The agency stated:

Whatever the reason for R&B's decision to submit a falsified State-Supplied Price Sheet, the failure to provide the required equipment for the permitted inspection, the public's health, safety, and welfare should not be put at risk as a result of R&B's failure to

---

[2] River Vale Twp. v. R. J. Longo Const. Co., 127 N.J. Super. 207, 216 (Law Div. 1974).

act in accordance with the Bid Solicitation and Contract requirements.

R&B filed a Notice of Appeal from the final agency decision and requested the agency stay its decision pending appeal. The agency denied the stay. Thereafter, we granted R&B's application to file an emergent motion and stayed the agency decision. We subsequently granted leave to appeal on an expedited basis.

BVW

BVW also submitted a bid to provide snow plowing and spreading services on state highways. On June 27, 2025, the agency advised BVW it intended to "make a [c]ontract award" for approximately 110 price lines. On July 17, NJDOT sent BVW a letter which stated it would be "inspect[ing] . . . all 635 trucks and snow plowing equipment," within "[ten] business days of receipt of [the] notice," pursuant to "Sections 4.4.1 . . . and Section 4.12.2" of the Bid Solicitation. The letter stated that "[a]t the time of the inspection, each vehicle and equipment must be physically on site and presented with a valid vehicle registration" and that "[f]ailure to comply . . . or presenting fewer than listed number of trucks and equipment may result in the termination of the affected Bid Solicitation [p]rice [l]ines."

A-0158-25

BVW responded to NJDOT via email on July 21, acknowledging receipt of the letter and indicating it would provide the requested information within ten business days. NJDOT emailed BVW twice on July 23, asking for its headquarters address to schedule the inspection. Later that day, BVW provided its address and a contact phone number. The following day, NJDOT emailed BVW twice, attempting to schedule an inspection on July 25. BVW responded that "our team is working on gathering everything to get back to you within the 10 business days. I'll confirm next week trucks and plows for you."

On July 29, NJDOT asked BVW to provide the list of subcontractors it intended to use to perform the snow plowing services. BVW sent a list of twelve subcontractors later that day.

On July 30, 2025, BVW informed NJDOT it could not "secure equipment" for thirty-one price lines. BVW provided registrations for 232 of the 467 registrations needed to support its remaining price lines. NJDOT responded that BVW had not yet set up an inspection date, and the registrations were not sufficient for an inspection. NJDOT reiterated that failure to comply or present "fewer than listed number of trucks and equipment may result in the termination of the affected Bid Solicitation [p]rice [l]ines."

A-0158-25

The following day, NJDOT again emailed BVW regarding the necessity for the inspection of the "467 trucks and plows claimed to be supported by [BVW]." NJDOT further stated that "[t]he deadline for ALL TRUCK and PLOW inspections is [August 3, 2025,] no exceptions."

According to an email sent from NJDOT to the agency, when NJDOT representatives went to inspect BVW's equipment on August 1, 2025,

> BVW informed [NJDOT] that [they] [were] not allowed to send a letter and threaten them with 10 days to inspect 400+ trucks and plows. They said the contract technically doesn't start [un]til October 1st and they would be ready, they are ordering plows now. BVW said it [was] not stated anywhere in the contract that NJDOT can do any of this. . . . The entire tone of the meeting was threatening and [BVW] stated they are in contact with a legal representative.
>
> . . . .
>
> . . . [BVW] ha[s] not scheduled one truck or plow to be inspected as of today[.] Also they supposedly ordered plows that they cannot even guarantee for Oct 1st.

On August 29, BVW offered an inspection on either September 4 or 5 of approximately 150 plows, then another 100-150 plows ten days after that with the remainder to be produced for inspection on October 1.

On September 5, 2025, the agency issued a revised NOI award, and recommendation report, rescinding the price lines previously awarded to BVW,

"for failing to provide the required equipment within the time established for inspections . . . ."  On September 10, BVW submitted a formal protest challenging the agency's revised NOI to award and amended recommendation report.

On September 12, 2025, the agency issued a final decision upholding the revised intent to award.  The agency noted that in its protest,

> BVW essentially claims that they made their "facility" available for inspection, and that it was willing to make its equipment available on dates of its choosing well beyond those offered by NJDOT, and that it was not required to have its trucks and plows available for inspection until after October 1st, the date BVW claims is the start of the contract term.

Like in the final agency decision issued to R&B, the agency advised that Bid Solicitation Sections 8.7 and 4.12.2 "state that all bidders' facilities, vehicles, and equipment, whether provided by the Contractor or the NJDOT, shall be subject to inspection to ensure the bidder can perform the contract."  The agency stated that "[t]he NJDOT Letter advised BVW that the NJDOT needed to inspect the equipment of BVW and any approved subcontractors they were intending to use for the 110 [p]rice [l]ines they were awarded."  Furthermore, "BVW was provided with abundant notice in the Bid Solicitation,

11

. . . that if it chose to bid [first] Preference, then it would need to provide its equipment for inspection."

The agency referred to the email chain and multiple communications between NJDOT and BVW and found

> BVW was provided with ample opportunities to present its equipment to satisfy the inspection requirements on a date of its choosing, and at its own facility, to which BVW affirmatively stated that it was working to get the information required for the inspection instead of voicing opposition to the required inspection.

The agency decision noted that when NJDOT met with BVW at its facility on August 1, 2025, "BVW failed to present any equipment for inspection . . . despite the multiple notifications in the Bid Solicitation, NJDOT [l]etter, emails and phone calls that the equipment would need to be presented for inspection to ensure BVW had the equipment it indicated it possessed" in its bid. The agency explained, as in its decision to R&B, the significance of an inspection:

> Without a physical inspection of equipment as permitted by the Bid Solicitation, the State cannot be sure that a bidder possesses the correct quantity of trucks, that those trucks are of the proper class as required pursuant to the [p]rice [l]ines in the Bid Solicitation and that the equipment is mechanically sound, in good working order and, capable of performing all tasks required under the Bid Solicitation. Without the inspection of equipment, the State cannot be assured 'that the contract will be entered into, performed and guaranteed according to its specified

12

requirements' as required pursuant to River Vale, 127 N.J. Super. at 216. For a contract that impacts the public's health, safety, and welfare significantly, the [agency's] and NJDOT's inspection process is a reasonable action to guarantee that its awarded contractors will be able to complete the required work and are in possession of the required equipment.

BVW filed a Notice of Appeal from the final agency decision and requested the agency stay its decision pending appeal. The agency denied the stay. Thereafter, we granted BVW's application to file an emergent motion and stayed the agency decision. We subsequently granted leave to appeal on an expedited basis.

As a result of this court's stay of the rescission of the price lines originally awarded to appellants, the agency extended the 2020 snowplow contract for six months regarding the affected price lines to ensure there would be snow plowing coverage for the 2025-26 season.

II.

On appeal, appellants raise multiple issues, essentially asserting the agency did not have the authority to rescind the award, and its actions were arbitrary, capricious and unreasonable. They further contend the agency erred in relying on Bid Solicitation Section 4.12.2 to require an inspection and

13

similarly "[m]isinterpreted Section 8.7 . . . by [t]reating [p]re-[a]ward [f]acility [i]nspections as [a]uthorization for [p]re-[c]ontract [e]quipment [i]nspections."

Our review of quasi-judicial agency determinations is limited. Allstars Auto. Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (citing Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). We "review[] agency decisions under an arbitrary and capricious standard." Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019).

The judicial role in reviewing all administrative action is generally limited to three inquiries:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars Auto. Grp., 234 N.J. at 157 (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

In addition, we defer to an administrative agency's "technical expertise, its superior knowledge of its subject matter area, and its fact-finding role." Messick v. Bd. of Rev., 420 N.J. Super. 321, 325 (App. Div. 2011). This deference, however, "is only as compelling as is the expertise of the agency, and

14

this generally only in technical matters which lie within its special competence." Application of Boardwalk Regency Corp. for a Casino License, 180 N.J. Super. 324, 333 (App. Div. 1981).

We review legal conclusions reached by an administrative agency de novo. Lavezzi v. State, 219 N.J. 163, 172 (2014). The party challenging the administrative action bears the burden of demonstrating that the action taken by the agency was incorrect. Id. at 171.

As we have stated, "[p]ublic bidding statutes exist for the benefit of taxpayers, not bidders, and should be construed with sole reference to the public good." Borough of Princeton v. Bd. of Chosen Freeholders of Cnty. of Mercer, 169 N.J. 135, 159-60 (2001) (citing Nat'l Waste Recycling, Inc. v. Middlesex Cnty. Imp. Auth., 150 N.J. 209, 220 (1997)).

III.

The narrow issues before this court are whether NJDOT was authorized under the Bid Solicitation documents to require appellants to present for inspection the equipment necessary to perform the snow plowing services; and, if appellants failed to comply with the inspection, was the agency permitted to rescind the NOI to award the contract. Our answer is yes to both questions.

15

A-0158-25

In the letters sent to appellants in July 2025, NJDOT stated its intention to inspect all trucks and snow plowing equipment pursuant to Bid Solicitation Sections 4.4.1 and 4.12.2. Section 4.4.1 is not pertinent as it lays out the requirements for contractors regarding their drivers. It does not refer to an equipment inspection.

Section 4.12.2 (Equipment Inspections) states that:

> All vehicles and equipment, whether provided by the Contractor or the NJDOT, shall be subject to inspection at any time during the [c]ontract term and/or a Call-Out. If the inspection reveals that any of the vehicles and/or equipment fail to comply with the requirements of the Bid Solicitation, including but not limited to Section 4.12.1, then that respective vehicle and/or equipment will not be permitted to operate.
>
> Outside of the usual NJDOT inspections provided for each Call-out, a Contractor may request an equipment inspection by NJDOT staff. It is not guaranteed that the NJDOT will respond to the request, and the Contractor is still expected to have the required equipment, properly equipped before the commencement of the Winter Season beginning October 1st.
>
> [(Emphasis added).]

A Call-out is defined in the Bid Solicitation documents as a "[t]elephone call from the NJDOT informing the Contractor to report for Operations at the [location assigned by NJDOT] at a specified time." The requested inspection was not a Call-out so the provision is not applicable here.

16

As for an inspection during a contract term, the anticipated contract term was for three years—October 1, 2025-September 30, 2028. The contractor was expected to provide services during the Winter Season period, defined as October 1 through April 30 of each year. Therefore, after considering the plain language of Section 4.12.2, we agree it does not provide NJDOT with specific authority to conduct the requested inspection.

But our analysis does not stop there as there is a provision within the Bid Solicitation documents that addresses and permits the State to inspect the Bidder's equipment. Moreover, appellants were explicitly notified in the July 2025 letter of the requirement for an inspection to which they did not object. In fact, both appellants engaged in communications with NJDOT, as detailed above, regarding the gathering of their equipment to present at the inspection.

Bid Solicitation Section 8.7 (State's Right To Inspect Bidder's Facilities) states that "[t]he State reserves the right to inspect the Bidder's <u>establishment</u> before making an award, for the purposes of ascertaining whether the Bidder has the necessary <u>facilities</u> for performing the Contract." (Emphasis added). Appellants contend "establishment" and "facilities" do not include vehicles and equipment. The agency asserts that if appellants' interpretation of Section 8.7

17

is deemed correct, the provision would be meaningless since buildings and property are not needed to perform the contractual snow plowing services.

"To determine the meaning of the terms of an agreement by the objective manifestations of the parties' intent, the terms of [a] contract must be given their 'plain and ordinary meaning.'" Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997) (quoting Kaufman v. Provident Life and Cas. Ins. Co., 828 F. Supp. 275, 283 (D.N.J. 1992)). "A writing is interpreted as a whole and all writings forming part of the same transaction are interpreted together." Ibid. (quoting Barco Urban Renewal Corp. v. Housing Auth. of Atl. City, 674 F.2d 1001, 1009 (3d Cir. 1982)) (citing Restatement (Second) of Contracts § 202(2) (1981)). We examine the document as a whole and do not "torture the language . . . to create ambiguity." Ibid. (quoting Stiefel v. Bayly, Martin & Fay, Inc., 242 N.J. Super. 643, 651 (App. Div. 1990)).

Appellants cannot sustain their argument regarding their reading of Section 8.7. Clearly, an inspection to ascertain "whether the Bidder has the necessary facilities for performing the [c]ontract" is to ensure the bidder has the necessary and sufficient equipment to plow snow on all the price lines it has included in the bid. An inspection limited solely to the bidder's physical building would be fruitless in accomplishing the obvious purpose:  that the

18

bidder has the equipment needed to perform the awarded work. Section 8.7 also provides the right for the inspection "before making an award." The purpose of the section is for NJDOT to evaluate, before the contract is awarded, whether the bidder can perform the necessary work under the contract to be awarded. As our Supreme Court has stated, "[w]ords and phrases in a statute should not be read in isolation," but instead "[courts] read them in context, along 'with related provisions[,] . . . to give sense to the legislation as a whole.'" State v. A.M., 252 N.J. 432, 451 (2023) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). We are satisfied the agency and NJDOT had the authority to conduct a pre-contract inspection of appellants' equipment under Section 8.7 of the Bid Solicitation documents.

Moreover, if there were some confusion, as now proffered, as to the purpose of the requested inspection, the July 2025 letters clearly stated what appellants needed to produce and what NJDOT needed to see to finalize the award. As detailed above, the letter specified NJDOT intended to inspect all of appellants' trucks and snow plowing equipment and the failure to present anything less would result in the rescission of the awarded price lines. Neither appellant objected to the inspection. To the contrary, there was a flurry of communication regarding the scheduling and specifics of what was needed. The

record establishes that appellants understood what they needed to present at the inspection to avoid a rescission of the awarded price lines. They simply did not comply with the essential requirement of satisfying NJDOT's request for inspection to ensure they had sufficient equipment to perform the contractual snow plowing services.

In sum, the agency and NJDOT relied on the Bid Solicitation documents to conduct an inspection of appellants' equipment needed to perform the contracted services. After the inspections, the agency determined appellants did not present the necessary trucks and plows to fulfill the contract requirements under the Bid Solicitation. As a result, the agency rescinded the awarded price lines.

Furthermore, at the time of these events, the State had not yet executed a final contract; there was only the NOI to award a contract. All bidders must submit, together with their quote, a form entitled "Offer and Acceptance Page." An authorized representative of the bidder must sign the page to demonstrate the binding nature of the bid on a State contract. The form also contains a section at the bottom of the form entitled "Acceptance of Offer" for the State's use only. The Section reads in relevant part:

> ACCEPTANCE OF OFFER (For State Use Only) The Offer above is hereby accepted and now constitutes a

> Contract with the State of New Jersey. The Contractor is now bound to sell the goods, products, or services in accordance with the terms of the Bid Solicitation and the State of New Jersey Standard Terms and Conditions.

There is a space for an authorized representative of the agency to countersign and fill in the contract award date and the effective date of the contract. Appellants submitted the Offer and Acceptance Page with their bid, but it was never countersigned by the State.

Appellants have not demonstrated the agency's determination was arbitrary, capricious or unreasonable. The agency explained its reasoning in its comprehensive final decision, concluding that "[f]or a contract that impacts the public's health, safety, and welfare significantly, the [agency] and NJDOT's inspection process is a reasonable action to guarantee that its awarded contractors will be able to complete the required work and are in possession of the required equipment." Here, the State and the public have a substantial interest in implementing these snow plowing contracts for its approximately 13,000 lane-miles of roadways as quickly as possible to ensure there will be snow plowing services in place at the time of the first snowfall.

A-0158-25

To the extent we have not addressed any of appellants' remaining arguments, we have deemed them of insufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.  We vacate the stay imposed under the October 10, 2025 orders.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

22

A-0158-25